23251. HARMON *v.* WIGGINS.

470

Decided February 9, 1934.

*F. S. Mackall,* for plaintiff in error.

*Henry M. Dunn, Anderson, Cann & Cann,* contra.

Jenkins, P. J. ■ Under section 5706 of the Civil Code (1910), an attachment affidavit, being an affidavit which is "the foundation of legal proceedings," is "amendable to the same extent as ordinary declarations, and with only the restrictions, limitations, and consequences now obtaining in the case of ordinary declarations." Acts 1887, p. 59; Acts 1889, p. 110. As with ordinary pleadings, since the change of the previous law by these acts, an attachment affidavit is now amendable, "whether in matter of form or of substance, provided there is enough to amend by." Civil Code, § 5681. Thus, where the affidavit does not swear positively to the ground of attachment, such as the non-residence of the debtor (Civil Code, §§ 5055, 5056), the defect is amendable.

*McDonald* v. *Kimball Co.,* 144 *Ga.* 105 (2) (86 S. E. 234); *Hensley* v. *Minehan,* 29 *Ga. App.* 251 (2, 3) (114 S. E. 647); *Sloan* v. *Smith,* 29 *Ga. App.* 591 (2) (116 S. E. 200); *Stovall* v. *Joiner,* 10 *Ga. App.* 204 (73 S. E. 22). Decisions made prior to the remedial acts embodied in section 5706, or without reference thereto, or where no effort to amend was made, are without application.

■ While, under section 5056, an attachment affidavit, if not made by the party seeking the attachment, must be made by "his agent or attorney at law," and the word "attorney" following might be ambiguous in that it might refer to an attorney in fact, yet an affidavit so signed will be sufficient where amendments to the affidavit and the pleadings show that the affiant was the attorney at law for the plaintiff. Moreover, even if the affiant were his attorney in fact, he would be an "agent" for the plaintiff within the requirements of the statute.

■ Section 5057 of the Civil Code with reference to giving bond in attachment proceedings provides that "where the affidavit is made by the agent or attorney at law of the plaintiff, such agent or attorney at law is . . authorized to sign the name of the principal, who shall also be bound thereby in the same manner as though he signed it himself." "Where it appears only from the affidavit . . that the affiant is agent for the creditor named in the affidavit, the accompanying bond, executed in the name of the creditor 'per' the affiant, without any descriptive word as to agency, sufficiently appears to be executed by the agent of the creditor having authority so to do," under the code section stated. *Greene* v. *Lombard,* 33 *Ga. App.* 518 (3) (126 S. E. 890). The fact that the instant attachment bond shows on its face only that it was executed in the name of the creditor "by" the party signing as "attorney" will not render the proceedings void or subject to dismissal, since, under the preceding ruling as to the sufficiency of the affidavit, the authority of the affiant to make the affidavit and execute the bond sufficiently appears.

■ Under the foregoing holdings, the court did not err in allowing the plaintiff's amendments to the attachment affidavit, and in overruling the motions and objections of the defendant, seeking to dismiss the proceedings.

■ Section 5102 of the Civil Code requires that "when the

attachment is returnable to the superior or county court, the plaintiff shall file his declaration *at* the first term." The word "at" as so used has been construed as equivalent to the words "not later than", so as to permit attachment affidavits to be filed in the courts specified "either at or before the first term of the court to which the attachment is returnable." *Smith* v. *Jacksonville Oil Co.*, 21 *Ga. App.* 679 (2) (94 S. E. 900). Giving a like construction to the similar provision in section 6 of the act approved August 15, 1927, amending the laws relating to the city court of Savannah, that declarations in attachment in that court "shall be filed *on* the first day of the term," and be returnable· and triable at the first term (Ga. L. 1927, pp. 452, 454), the objection that the instant declaration, although filed prior to the first day of the term, was not filed *on* that day, is without merit.

■ (*a*) "As a general rule, the courts of this State have no extraterritorial jurisdiction, and can not make the citizens of foreign States amenable to their process, or conclude them by a judgment in personam, without their consent." *Gordy* v. *Levison*, 157 *Ga.* 670 (122·S. E. 234) ; *Ford* v. *So. Ry. Co.*, 33 *Ga. App.* 24 (125 S. E. 479), and cit. Such a judgment is void, unless the defendant has waived jurisdiction, expressly, or impliedly by appearing and pleading to the merits. ·*McKnight* v. *Wilson*, 158 *Ga.* 153, 161 (122 S. E. 702) ; *Anderson* v. *Turner*, 35 *Ga. App.* 428 (133 S. E. 306). Under the constitution and statutes of this State, the venue of civil actions against natural persons, unless within specified exceptions, is the county in which the defendant resides. Civil Code (1910), §§ 6543, 5526. But "a citizen of another State, passing through this State, may be sued in any county thereof in which he may happen to be at the time when sued." Id. §§ 5531, 22. These provisions, however, relate to actions, proceedings, and judgments in personam. *Moss* v. *Strickland*, 138 *Ga.* 539 (2), 542 (75 S. E. 622). And there is no constitutional or other provision regulating the jurisdiction or venue of attachments against nonresidents ·of the State, except as provided in section 5063, which makes such attachments "returnable to the superior court of any county in this State," if "the debt sworn to exceeds one hundred dollars." *N., C. & St. L. Ry. Co.* v. *Cleghorn*, 94 *Ga.* 413 (21 S. E. 227) ; *Carroll* v. *Groover*, 27 *Ga. App.* 747, 748 (110 S. E. 30). City courts have jurisdiction "to try all civil cases except those in which exclusive

jurisdiction is vested in the superior court." Michie's Code, § 4831 (2). The city court of Savannah was not, therefore, without jurisdiction or venue over an attachment against a nonresident of Georgia, especially where the writ was levied upon land in Chatham county. See *Carroll* v. *Groover, supra.*

(*b*) Nor was the court without jurisdiction over the subject-matter of the attachment, upon the ground that both the individual plaintiff and the individual defendant were residents of Florida, that the cause of action arose out of a contractual transaction consisting of notes secured by a mortgage on Florida land, and was executed and to be performed in Florida, and that neither the transaction nor the cause of action bore any relation to any business done in Georgia. While the rule is otherwise as to proceedings in personam, "the property of a citizen of a foreign State is subject to the jurisdiction of our courts, if within the limits of the State, and may be applied, both at law and in equity, to the payment of his debts." *Dearing* v. *Bank of Charleston,* 5 *Ga.* 497 (3, 5), 513 (48 Am. D. 300) ; *Molyneux* v. *Seymour,* 30 *Ga.* 440 (76 Am. D. 662). "When no jurisdiction is obtained over the debtor's person, the remedy partakes of the nature of a proceeding in rem, in that it proceeds against the property in the custody of the court and the judgment binds such property only; but where jurisdiction of the debtor's person is obtained, either by personal service or appearance, the proceeding is ordinarily in personam, and a personal judgment is rendered without regard to the attachment." 6 C. J. 33. Under section 5121 of the Civil Code, this is the rule in this State, the judgment on the attachment binding and being entered only against the property attached, except where a general judgment in personam, binding all the debtor's properties, is authorized, where he has appeared and made defense, or has been duly cited and notified as provided by section 5103, or has given bond as provided by the code. *Reeves* v. *Chattahoochee Brick Co.,* 85 *Ga.* 477, 479 (11 S. E. 837). "In case of an attachment against a nonresident debtor [under section 5055], executed by levy, the jurisdiction of a court of this State attaches by virtue of the seizure of the property of such nonresident; and where in obedience to a writ of attachment, the officer executing the same seizes certain property as the property of such a nonresident debtor, and so makes his return to the court, it acquires such jurisdiction as will enable it to proceed

to judgment subjecting his interest in the property to the payment of the debt." *Earle* v. *Sayre,* 99 *Ga.* 617 (25 S. E. 943). In the absence of statute or decision, as exists in a few States, the right to proceed by attachment is not limited to citizens or residents of the State, and "it is generally immaterial that the attaching creditor is a nonresident." 6 C. J. 39, § 20. The rule in this State, "that suit on a transitory cause of action, against a nonresident corporation, is not within the jurisdiction of Georgia courts, unless the defendant voluntarily consents, or that the action grows out of business transacted by the defendant, which business must be a part of the business for which it was organized, or the cause of action must bear a relation to such business conducted in this State, and there must be proper service," affects nonresident defendant corporations and proceedings and judgments in personam, and not individual defendants, is based upon code sections regulating suit and service on such corporations, and in no way involves jurisdiction in rem, as by attachment, under the statute controlling the same. *Louisiana State Rice Milling Co.* v. *Mente,* 173 *Ga.* 1 (159 S. E. 497). Cases cited, therefore, as to the right to proceed in personam against nonresident corporations by plaintiffs, nonresident or resident, on causes of action arising out of the State, have no bearing on the question. See, in this connection, *Reeves* v. *So. Ry. Co.,* 121 *Ga.* 561, 563-565 (49 S. E. 674, 70 L. R. A. 513, 2 Ann. Cas. 207); *Parramore* v. *Alexander,* 132 *Ga.* 642, 644 (64 S. E. 660); *Cincinnati &c. Ry. Co.* v. *Pless,* 3 *Ga. App.* 400 (60 S. E. 8); *Lytle* v. *So. Ry. Co.,* 3 *Ga. App.* 219 (59 S. E. 595). Under section 2174 of the Civil Code, the citizens of other States are "by comity . . allowed the privilege of suing in our courts . . so long as the same comity is extended in their courts to the citizens of this State;" and there is nothing in our constitution, statutes, or decisions which denies or limits this express statutory privilege where the cause of action arises outside of this State, unless the right or remedy invoked by the nonresident plaintiff contravenes some statute or rule of public policy of this State denying or limiting such right or remedy.

(c) For the reasons stated in this division of the opinion, the court did not err in sustaining the demurrers and motions of the plaintiff seeking to strike the special pleas of the defendant which alleged a want of jurisdiction.

■ It is a general rule as to contracts of all kinds that they are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, unless the contracting parties clearly appear to have had some other law in view. But the character and extent of the remedy, and the mode of procedure are determined by the law of the forum in which the action is instituted. *Beck & Gregg Hardware Co.* v. *Southern Surety Co.,* 44 *Ga. App.* 518 (162 S. E. 405), and cit.; *Tillman* v. *Gibson,* 44 *Ga. App.* 440, 442 (161 S. E. 630); *Pratt* v. *Sloan,* 41 *Ga. App.* 150, 152 (152 S. E. 275). With respect to the remedy, it is settled by statute and decision in this State that "the pendency of a prior suit in another State will not abate a suit between the same parties for the same cause in this State." Civil Code, § 4332, codifying the ruling in *Chattanooga R. Co.* v. *Jackson,* 86 *Ga.* 676 (5), 685 (13 S. E. 109); *Ambursen Construction Co.* v. *Northern Contracting Co.,* 140 *Ga.* 1, 6 (78 S. E. 340, 47 L. R. A. (N. S.) 684). In the instant case, subject to his special appearance and attack upon the jurisdiction, the defendant pleaded that, before the filing of the attachment proceedings, the plaintiff had filed in a circuit court of Florida a suit in equity to foreclose the mortgage on real estate securing the same indebtedness, in which the plaintiff had specially prayed for a personal deficiency decree against this defendant for the amount remaining due after the proceeds of the foreclosure sale should be applied upon the debt; that the mortgage represented the purchase-price of the property; that the notes, mortgage, and contract obligations were made and to be performed in Florida; that at the time of this transaction, there existed and now exists a Florida statute, providing that "in all suits for the foreclosure of mortgages heretofore or hereafter executed, the entry of a deficiency decree for any portion of a deficiency, should one exist, shall be within the sound discretion of the court, but the complainant shall also have the right to sue at common law to recover such deficiency. Provided, no suit at law to recover such deficiency shall be maintained against the original mortgagor or mortgagors in cases where the mortgage is for the purchase-price of the property involved, and where the original mortgagee becomes the purchaser thereof at foreclosure sale and also is granted a deficiency decree against the original mortgagor or mortgagors" (Acts 1927, c. 11993, par. 1; Acts 1929, c. 13625, par. 1; Fla. Comp. Gen. Laws,

§ 5751) ; that, under the law of Florida, "where a mortgagee files a suit in equity to foreclose a mortgage in order to enforce the payment of an indebtedness for which the mortgage deed was given as security, and in said suit in equity prays for a deficiency decree, he can not at the same time maintain a suit at law to enforce the payment of the indebtedness as evidenced by the notes," and "where the right to a deficiency decree has been submitted to the court in a bill to foreclose a mortgage, there can be no suit at law until after the final determination by the court and sale of the mortgaged property under a proper decree;" and that "the said suit in equity is still pending and undisposed of, and no deficiency decree has been granted and entered against the defendant." This pleading is supported by reference in the briefs to the decision of the Supreme Court of Florida in Provost v. Swinson, 146 So. 641, deciding the rule to be as pleaded, and holding that if the chancellor should consider and determine the issue as to a deficiency, "and should hold that the complainant was not entitled to a deficiency decree in any amount, the complainant would be barred by such decree from attempting to enforce his claim in any other jurisdiction." But the Florida court, quoting with approval a Wisconsin case, said: "The statute is purely remedial. Its purpose is to avoid circuity of action by settling in the foreclosure suit all the rights of the parties thereto, thus avoiding the necessity of another suit." The statute and rule pleaded, therefore, affect the *remedies* and not the rights of the parties under their Florida contract; and, under the Georgia statute and decisions, can not be permitted to abate the privilege of the Florida mortgagee to bring an attachment proceeding at law in this State upon the same notes, even though his foreclosure suit, with its prayer for a deficiency judgment, may remain at the same time pending and undisposed of in a Florida court. No question of res judicata by any prior decree in Florida, granting or determining adversely the claim to a deficiency judgment, and what effect such a decree, if made, would have upon the instant suit, is presented by the record, since it is distinctly pleaded that the Florida suit is undisposed of and no deficiency decree has been granted.

Subject to his special pleas, the defendant demurred to the declaration in attachment, upon the grounds, that it "does not allege that the notes were in the bank on the dates they were due,"

and that "it does not state specifically on what date [plaintiff] exercised his option [to accelerate and declare the whole indebtedness due], and . does not state in what manner he exercised the option he alleges, and does not state whether he notified the defendant thereof." The amended declaration sues upon a series of notes, all payable at the "First National Bank and Trust Co., in Orlando," Florida, under an accelerating clause in the mortgage and extension agreement that in the event of a default in the payment of any principal or interest instalment, the creditor could "at his option . . immediately declare all sums . . immediately due and payable . . and immediately, at his option, institute proceedings." It is alleged that "the defendant on April 8, 1932, defaulted in the payment of the interest instalment of $315, and on October 8, 1932, defaulted in the payment of the principal instalment of $500 due; whereupon, on or about the 15th day of December, 1932, your petitioner exercised his option to declare the entire balance of indebtedness due and payable." It has been held in Florida that, "in a suit against the maker of a promissory note, payable at a particular time and place, it is not necessary to allege in the declaration a presentation for payment at the time and place named, nor to prove such presentation at the trial, in order to entitle the plaintiff to recover on such note" (Greeley v. Whitehead, 35 Fla. 523, 17 So. 643, 28 L. R. A. 286, 48 Am. St. R. 258), but that where there is a series of notes, and an acceleration clause is invoked to accelerate their maturity under an "option" therefor to the mortgagee, "some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, otherwise the provision has no operation, and the person liable has a right to tender payment." "A mortgagee can not merely in his own mind effectively exercise the option to declare the whole principal debt due; he must either communicate his decision to the record or known obligor or manifest his election by some affirmative outward act." Clay v. Girdner, 103 Fla. 135 (138 So. 490). "While the mere filing of foreclosure suit may sufficiently show complainant's election to exercise his option to accelerate the whole mortgage debt, yet, where there is substantial evidence of waiver, a court of equity may require reasonable notice and an opportunity given to defendant to make payments actually due before enforcing the whole debt." "Where the holder of a

mortgage does not, within a reasonable time after default in payment of instalments, elect to exercise his option to accelerate and declare the whole mortgage debt due and payable, equity may require a reasonable notice to mortgagors and an opportunity given to pay all instalments they are in duty bound to pay before filing suit to enforce the whole mortgage debt." Jaudon *v.* `Equitable Life Assurance Society, 102 Fla. 782 (136 So. 517). "It appears to be well settled that where the place of payment is designated in the note as a particular bank, presentment and demand at the specified bank are necessary to charge either the maker or endorser, unless presentment and demand may be made personally to the party charged. . . It would be most unfair, unreasonable, and unjust to hold that . . the payee of a series of negotiable notes, evidencing a debt payable in insalments, could withhold presentation of the first maturing instalment notes, and then, after maturity, without notice to the maker, invoke the acceleration clause contained in the notes upon the theory that default had been made in payment." Stegemann *v.* Emery (Fla.), 146 So. 650, 652. However, in Georgia, "the maker of a negotiable instrument, whether payable at a bank or not, is not by law entitled to notice of maturity and non-payment." *Tuck* v. *National Bank of Athens,* 108 *Ga.* 446 (33 S. E. 983). Since the enactment of the negotiable instruments law, codified in Michie's Code, § 4294(70), it is the Georgia rule as to presentment for payment that it "is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is by its terms payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part." But with regard to the exercise of an option or election by a holder of a series of promissory notes to accelerate their maturity, it has been held in this State that this requires "affirmative action on the part of the holder to effectuate this result; . . the law will not presume the exercise of the option on the plaintiff's part." *Sheffield* v. *Johnson County Bank,* 2 *Ga. App.* 221, 224 (58 S. E. 386). The amended petition failed to show "in what manner [plaintiff] exercised his option" referred to, "on or about" December 15, 1932, and "whether he notified the defendant or not," and was subject to this ground of attack by the special demurrer. While the failure to allege that the defaulted

notes were placed in the bank where they were payable, or that they were presented to the debtor, did not of itself render the petition defective, the bare allegation that the plaintiff "exercised his option to declare the entire balance of indebtedness due and payable" was either a mere legal conclusion or an averment of fact too general to inform the defendant of the important facts necessary to defend against the alleged *default* of the *entire indebtedness*. Whether the Florida rulings as to the necessity of a presentment of the matured note to the maker at the bank for payment, where there is a series of notes, and the need of alleging more than the mere filing of the Florida suit in case of delay in exercising the option after a default, should be given force and effect in the instant case, need not be determined. References in the defendant's pleas to the Florida suit can not be considered upon demurrer to the petition. There was no averment whatever that the plaintiff exercised his option by filing the suit in Florida, either "on or about" December 15, 1932, when he alleges generally that he "exercised his option," or at any other time. Nor does the record present the question whether the filing of the instant attachment proceedings themselves constituted a valid and sufficient exercise of the option. See *Pape* v: *Woolford Realty Co.*, 35 *Ga. App.* 284 (2) (134 S. E. 174).

While the court properly denied the defendant's motions, dismissed his pleas, and overruled other grounds of demurrer, upon all other objections and contentions made, the ground of special demurrer just discussed should have been sustained, with a reasonable opportunity to the plaintiff to amend his declaration to remedy the defect stated; otherwise, if the pleading is not so amended, the deficiency relating to the vital question of default, the declaration should be dismissed. In all other respects, the rulings of the court are affirmed.

*Judgment affirmed in part, and reversed in part. Stephens and Sutton, JJ., concur.*